UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA – CENTRAL DIVISION

| | |
|---|---|
| **ELEMENT 119, LLC, and KETTLESTONE HEIGHTS, LLC**,<br><br>Plaintiffs,<br><br>vs.<br><br>**LAUREN DEGEER LLC; DRF SERVICES, LLC; and MALLWOOD PARK**<br><br>Defendants. | CASE NO. 4:22-cv-00359<br><br>**COMPLAINT FOR COMMON LAW FRAUD AND CONVERSION**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Element 119, LLC and Kettlestone Heights, LLC ("Plaintiffs") bring this Complaint for common law fraud and conversion against Defendants, Lauren Degeer LLC ("Degeer"), DRF Services, LLC, and Mallwood Park d/b/a Lauren Degeer, LLC ("Mallwood Park" and collectively "Defendants"), and allege as follows:

## NATURE OF THE CASE

1. This is an action alleging fraud arising from a scheme that was designed and implemented to defraud Plaintiffs (the "Loan Scheme").

2. Specifically, Defendants defrauded Plaintiffs through a scheme in which Plaintiffs believed they were applying for a legitimate business loan, but after making several significant payments that Defendant Degeer told them were necessary to make in order receive the loan, they never received any loan.

3. Bradley Stanbrough ("Stanbrough") is a small business owner based out of Waukee, Dallas County, Iowa. He owns and operates Element 119 Homes, LLC, and Kettlestone Heights, LLC.

1

4. In the Spring of 2022, Stanbrough needed a business loan for his companies. He sought the advice of Russ Olson of Watermark Capital, who identified Lauren Degeer and Lauren Degeer LLC as a potential loan source.

5. Discussions began in earnest in May 2022. Stanbrough originally sought a $5 million loan but eventually increased his request to $5.3 million.

6. Degeer ostensibly offered significant loans which did not require personal guarantees of the loan.

7. Degeer issued a "loan approval" to Plaintiffs for $5.3 million.

8. From the period of May 2022 through early August 2022, Ms. Degeer represented to Plaintiffs that in order for Plaintiffs to receive their loan, they would have to make various payments.

9. When Plaintiffs made payments in anticipation of receiving the loan, Ms. Degeer would represent that the loan would be available shortly, but that Plaintiffs would need to make "just one more payment" in order to receive the loan.

10. These four separate "payments" were ostensibly for an "origination fee," "payment protection insurance," a "security deposit," and "AFR taxes."

11. On May 17, 2022, upon Ms. Degeer's instructions, Stanbrough wired $53,000 to Mallwood Park, an entity believed to be an alter ego of Degeer, after Ms. Degeer provided him wire instructions and told him it was a required "origination fee" he needed to make in order to receive the loan.

12. On May 27, 2022, upon Ms. Degeer's instructions, Stanbrough wired $265,000 to Mallwood Park, an entity believed to be an alter ego of Degeer, after Ms. Degeer provided

wire instructions and instructed him it was required "payment protection insurance" to obtain the loan.

13. On July 6, 2022, upon Ms. Degeer's instructions, Stanbrough wired $265,000 to DRF Services, LLC, an entity believed to be an alter ego of Degeer, after Ms. Degeer provided him wire instructions and told him it was a required "security deposit" he needed to make in order to receive the loan.

14. On July 19, 2022, upon Ms. Degeer's instructions, Stanbrough wired $222,070 to DRF Services, LLC, an entity believed to be an alter ego of Degeer, after Ms. Degeer provided him wire instructions and told him it was a required "AFR tax payment" he needed to make in order to receive the loan.

15. DRF Services, LLC, and Mallwood Park, LLC, are the alter egos of Lauren Degeer LLC because upon information and belief, (1) they are controlled by Lauren Degeer LLC to the extent that they have independent existence in form only and (2) they have been used as a subterfuge to perpetuate a fraud.

16. The total amount of money stolen through the Loan Scheme by Degeer from Stanbrough is $805,070.

17. Plaintiffs have demanded either (a) the return of all their payments or (b) the loan amount from Degeer, but Plaintiffs never received the loan promised to them nor the return of their payments.

18. Plaintiffs have been damaged in an amount to be determined at trial.

## **THE PARTIES**

19. Plaintiff Element 119, LLC is an Iowa limited liability company with its principal place of business in Waukee, Dallas County, Iowa.

20. Plaintiff Kettlestone Heights, LLC is an Iowa limited liability company with its principal place of business in Waukee, Dallas County, Iowa.

21. Defendant Lauren Degeer LLC is a Nevada limited liability company with its principal place of business in Las Vegas, Clark County, Nevada.

22. Defendant DRF Services, LLC is a Minnesota limited liability company with its principal place of business in Eden Prairie, Hennepin County, Minnesota and is believed to be an alter ego of Lauren Degeer LLC.

23. Defendant Mallwood Park d/b/a Lauren Degeer, LLC is not a registered business and is believed to be an alter ego of Lauren Degeer LLC.

## JURISDICTION AND VENUE

24. This Court has original subject-matter jurisdiction pursuant to 27 U.S.C. § 1332 because the parties' citizenship is diverse and the amount in controversy exceeds $75,000, exclusive of interest and costs.

25. This Court has personal jurisdiction over Defendants Lauren Degeer LLC, DRF Services, LLC and Mallwood Park because the Defendants have purposefully directed their conduct at this forum with respect to the Loan Scheme.

26. Venue is appropriate in this Court because a substantial part of the events or omissions giving rise to the action occurred in this district. 28 U.S.C. § 1391(b)(2). Venue is further proper in this Court pursuant to 18 U.S.C. § 1965(a) because the Defendants are found and/or transacts their affairs in this District given the Defendants' participation in the Loan Scheme, as alleged above.

## FACTUAL BACKGROUND

27. In April 2022, Plaintiffs identified the need for a loan for their businesses and sought the advice of Russ Olson ("Olson") at Watermark Capital, located in West Des Moines, Iowa.

28. Olson identified Lauren Degeer and Lauren Degeer, LLC as potential sources for a loan.

29. Lauren Degeer was an appealing option for a loan because she ostensibly did not require loans to which she provided access to be personally guaranteed.

30. From May 2022 through August 2022, Plaintiffs exchanged much correspondence with Ms. Degeer regarding obtaining a loan for around $5.3 million.

31. The scheme was clever and sophisticated. Throughout Ms. Degeer's correspondence with Plaintiffs, she provided many documents which on their face appeared to be legitimate loan paperwork.

32. Ms. Degeer promised that the loan would be coming to Plaintiffs on many occasions.

33. Ms. Degeer's pattern was as follows: first, she issued paperwork which indicated that Plaintiffs had been approved for a loan.

34. She would then state that the loan would be available to Plaintiffs on a certain upcoming date.

35. Just prior to "distributing" the loan, Ms. Degeer would then inform Plaintiffs that the loan had been approved and would be available soon, but Plaintiffs just needed to make "one more payment" to the lender in order to receive the loan.

36. As detailed above, through a series of payments Plaintiffs made believing that thereafter they would receive their loan, Plaintiffs sent a total of $805,070 to Degeer LLC, DRF Services, LLC and Mallwood Park.

37. Plaintiffs never received their loan from Ms. Degeer or Degeer LLC despite many requests, nor the return of payments made after demand.

38. Because Plaintiffs spent $805,070 in anticipation of receiving a loan they never received, their businesses have been irreparably harmed. Employees have had to be let go and bills are going unpaid.

39. Stanbrough, as the owner of both businesses, has experienced extreme emotional distress as a result of the fraud perpetrated against him and his businesses.

40. Due to Defendants' actions, Plaintiffs have actual damages in the amount of $805,070, plus having to spend significant funds to hire attorneys to investigate the scheme, plus damages which are still being calculated from the fall-out in each business.

## FIRST CLAIM FOR RELIEF

### (Fraud)

41. Plaintiffs incorporate by reference and reallege the foregoing paragraphs as though fully set forth herein.

42. Defendants represented to Plaintiffs that if they made certain payments as described in paragraphs 11-14 of this Petition, that Plaintiffs would receive a $5.3 million loan.

43. At the time the Defendants made these representations, the Defendants knew that the representations were untrue.

44. At the time the Defendants made these representations, the Defendants made the representations with the intent to deceive and for the purpose of inducing Plaintiffs to act upon those representations.

45. Plaintiffs did in fact rely on Defendants' representations and were induced thereby to act to their injury or damage.

46. Plaintiffs have been damaged in an amount to be determined at trial.

## SECOND CLAIM FOR RELIEF

### (Conversion)

47. Plaintiffs incorporate by reference and reallege the foregoing paragraphs as though fully set forth herein.

48. Plaintiffs had rightful possession and control of the money that they used to make payments to the Defendants.

49. Defendants exercised wrongful control over this money by fraudulently inducing the Plaintiffs to make payments to them for a loan that they never provided to Plaintiffs.

50. Defendants knew that they representations that they made to the Plaintiffs were false and the representations made to the Plaintiffs were made with the intent to deceive and induce the Plaintiffs into making these payments to obtain the promised loan.

51. Defendants' actions were contrary to Plaintiffs' possessory right to their property.

52. Defendants' wrongful control amounts to a serious interference with the Plaintiffs' right to control their property.

53. Plaintiffs were significantly harmed by Defendants' conversion of their property.

54. Defendants are justly required to pay the full value of the property that they wrongfully converted from the Plaintiffs.

55. Defendants' exercise of wrongful control over the money was performed with willful and wanton disregard for the Plaintiffs' rights, entitling the Plaintiffs to punitive damages.

## THIRD CLAIM FOR RELIEF

**(Exemplary Punitive Damages)**

56. Plaintiffs incorporate by reference and reallege the foregoing paragraphs as though fully set forth herein.

57. Defendants' actions alleged above were malicious, willful and wanton, and were made with the specific intent to harm Plaintiffs.

58. In order to deter such conduct in the future, Plaintiffs should be awarded exemplary punitive damages in an amount of not less than $10,000,000.

## JURY DEMAND

59. Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs hereby demand a trial by jury of all issues so triable that are raised herein or which hereinafter may be raised in this action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for judgment against Defendants as follows:

1. Finding that the Defendants are jointly and severally liable for all damage caused to Plaintiffs;

2. Awarding Plaintiffs monetary damages in an amount not less than $805,070, said amount to be proven at trial;

3. Awarding Plaintiffs their litigation expenses, including reasonable attorneys' fees, costs, and disbursements;

4. Awarding Plaintiffs punitive damages in the sum of not less than $10,000,000 or an amount otherwise to be decided by a jury; and

5. Granting such other relief as the case may require or as may be deemed proper and equitable.

Respectfully submitted,

*/s/ Alison F. Kanne*
Alison F. Kanne    AT0013262
Benjamin G. Arato    AT0010863
Austin C. Maas    AT0014906
WANDRO & ASSOCIATES, P.C.
2501 Grand Ave. Suite B
Des Moines, IA 50312
Telephone: (515) 281-1475
Facsimile: (515) 281-1474
Email: akanne@2501grand.com
      barato@2501grand.com
      amaas@2501grand.com

ATTORNEYS FOR PLAINTIFFS